## Case No. 7,961.

### LA BAW et al. v. HAWKINS et al.

[2 Ban. & A. 561.] [1]

Circuit Court, D. New Jersey. March, 1877.

PATENTS—INFRINGEMENT— MEASURE OF DAMAGES —PROFITS OF INFRINGER—NET GAINS —LICENSE FEE.

1. Profits are the net gains of the infringer from the use of the patented invention, while damages are the losses sustained by the owner in consequence of the infringement.

2. No general rule can be announced to govern the master in taking an account.

3. Sometimes the profits of the infringer form the sole criterion of the actual damages sustained by the patentee, and then a report of the net gains covers the whole ground of profits and damages.

4. In other instances it would be the duty of the master to add together the net gains of the infringer and the license fee which the patentee has fixed, and to make the aggregate the measure of the profits and damages which the wrongdoer ought to pay.

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

5. A transfer of "the sole and exclusive right and monopoly of manufacturing" under a patent, by the owners, of their entire interest in the patent, to be paid for by a certain royalty, is not the establishment of the ordinary license fee by which any one acquires the right of using the patented invention.

[Cited in Colgate v. Western Electric Manuf'g Co., 28 Fed. 147.]

6. Such a license fee cannot be invoked as a safe criterion of the complainants' damages, unless evidence is offered showing that the licensees of the complainants were deprived of the sale of the number of machines which the defendants maunfactured and sold.

7. Where the defendants are manufacturing under a patent which, although an infringement of the complainants' patent, contains valuable improvements upon it, and for which the defendants pay a royalty, the amount of the royalty paid by them is a proper item to be deducted from the aggregate amount of profits realized by them.

8. The rule for the master on a reference in such cases, if he is satisfied that the defendants were acting in good faith under another patent, is to allow all necessary expenditures incurred in its use.

9. The fact that the defendants had not actually paid the license fee to the owner of the subsequent patent does not change the rule, when it is shown that they are liable for the amount of such royalty.

10. Where the defendants have incurred an expense in "electrotyping and engraving" for the purpose of advertising their machines. it is a legitimate expenditure in prosecuting their business. and the amount so paid should be deducted from the profits realized by the defendants in making up the account.

[This was a bill in equity by George W. La Baw and others against William Hawkins and others for the alleged infringement of reissued patent No. 3,445, of original patent No. 12,956. There was a decree in favor of complainants for an injunction, and ordering an account to be taken. Case No. 7,- 960. The case is now heard upon exceptions to the master's report.]

Edward L. Dobbins, for complainants.
Runyon & Leonard, for defendants.

NIXON, District Judge. On the reference for an account, ordered in the above case,[2] the master has made an alternative report. The large amount of evidence taken has been returned, and the master, referring to it, states that if the profits and damages are to be measured by the royalty or license fee of $3 on each mitre machine manufactured and sold by the defendants, a decree should be entered for $1,443 in favor of the complainants. But if the actual profits realized by the defendants belong to, and are to be awarded to the complainants, he finds these to be the sum of $2.672.41.

The counsel for the defendants has filed three exceptions to the report, to wit: 1. Because the master, by his report, finds against the exceptants and in favor of the complainants for the sum $2.672.41, on the principle that the complainants are entitled to all the gains and profits, resulting to the except-

2See La Baw v. Hawkins [Case No. 7,960].

ants, after deducting the costs of manufacturing and selling 481 mitre machines; whereas he should have been governed by the rule that the complainants had established a license fee for the use of their patent, and that the measure of their loss or damage, was the amount of that fee, to wit, $1,443. 2. Because the master, in taking, stating and reporting the account, and assessing the said damages on the principle of gains and profits, excluded the sixth item of $962, under the head of "Sundries" in the schedule of costs of manufacturing—the amount of royalty claimed to have been paid by the exceptants, to the owners of the Hall's letters patent—whereas the said master should have included the said sum in the amount of the costs of manufacturing and selling the said mitre machines, the said sum of $962 having been actually paid by them for such royalty. 3. Because the master rejected the item of $64 charged for engraving and electrotyping, whereas he should have allowed that amount as part of the costs of manufacturing and selling the said mitre machines, the same having been expended for the purpose of advertising the sale of the said machines.

The counsel for the complainants has filed no exceptions: but contented himself, at the hearing, with submitting an argument, tending to show that the actual profits shown to have been realized by the defendants should be awarded, and that the master properly excluded the items referred to in the 2d and 3d exceptions of the defendants. Upon this state of facts, the only matters, which seem to require the consideration of the court, are the defendants' exceptions.

1. The first refers to the rule or principle on which the profits and damages should be awarded. Some confusion, I think, has arisen in the case, because the master and the counsel have not clearly distinguished between them. This is not to be wondered at, in view of the unsettled condition of the law in this regard. Under the patent act [5 Stat. 117], profits may be defined to be the net gains of the infringer from the use of the patented invention, while damages are the losses sustained by the owner in consequence of the infringement. The bill of complaint was filed since the law was passed authorizing the owner of a patent to recover, in one suit, damages as well as profits, and it prays for both. The interlocutory decree followed the prayer of the bill, and the reference directed the master to take an account of the gains and profits which the defendants have received, or which have arisen or accrued to them from infringing the exclusive rights of the complainants by the manufacture. use and sale of the mitre machines patented in the letters patent upon which the suit was brought. and also, in addition thereto, to assess the damages which the complainants have sustained by reason of such infringement.

No general rule can be announced to govern the master in taking the account in such a case. Sometimes the profits of the infringer is the sole criterion of the actual damage sustained by the patentee, and then a report of the net gains covers the whole ground of profits and damages. In other instances—I do not say that this is one of them—it would be the duty of the master, under such a reference, to add together the net gains of the infringer and the license fee which the patentee has fixed, and to make the aggregate the measure of the profits and damages, which the wrong-doer ought to pay. But the alternative report of the master seems to imply that he is not permitted to include both, and that he must make an election and reject either the one or the other.

An examination of the testimony returned to the master shows that no established royalty or license fee exists. The only evidence in regard to it was the agreement entered into between the complainants and Seymour & Whitlock, dated September 21st, 1870, which was proved before the master and annexed to his report. The owners of the patent, by this agreement, transferred to Seymour & Whitlock "the sole and exclusive right and monopoly of manufacturing, selling and vending machines and improvements thereto, under and by virtue of the said letters patent (of the complainants) and the reissue and renewal thereof, for the term of the existence of the said patent, reissue and renewal thereof," as fully as the grantors could have done had not said grant been made. It seems to have been executed in reference to the alleged infringement of the defendants, as nothing was to become due for the use of the invention, as long as Hawkins & Dodge continued to infringe. Six dollars royalty was to be paid for each machine manufactured and sold during the first six months after the said Hawkins & Dodge ceased to manufacture mitre machines "with angular knives reciprocating vertically for cutting mitres in materials with a shear cut," and three dollars for every machine sold after the expiration of the said six months. Such a transfer by the owners of their entire interest in the patent, to be paid for by a certain royalty, is not the establishment of the ordinary license fee, by the payment of which any one acquires the right of using the patented invention. It grants a monopoly, in consequence of which the grantees can afford to pay a much larger price for its exclusive use than if they were subject to competition from other licensees. It cannot be invoked as a safe criterion of the measure of the complainants' damages, unless evidence is offered showing that the licensees of the complainants were deprived of the sale of the number of mitre machines which the defendants manufactured and sold. No such proof was made or attempted, and the first exception of the defendants must be overruled.

2. The second exception relates to the refusal of the master to allow to the defendants, as a part of the expenses of their manufacture and sale, the sum of $902, the royalty which they had agreed to pay for the use of Hall's patent. The defendants were manufacturing and selling mitre machines under certain letters patent (No. 21,194) granted to one Stephen W. Hall, August 17th, 1858, and the court has held that the use of the said patent was an infringement of the complainants' invention. But they were none the less liable to pay the royalty charged by the owner of the Hall patent. It may well be that one machine infringes another, and yet the former may contain improvements which add materially to the value of the latter. 1 had occasion to consider this question in the case of American Nicholson Pavement Co. v. City of Elizabeth [Case No. 309], where the defendants were the licensees of, and were acting under the Brocklebank & Trainer patent; and although they were held to infringe the complainants' invention, I did not hesitate to sanction a large allowance, made by the master for royalty or license fee, due for the use of the infringing patent. It is a question of profits, and such payment diminishes the amount of the defendants' profits to that extent.

The rule for the master, on a reference in such cases, is to inquire whether the defendants were acting in good faith, under another patent; and if he finds they were, to allow all necessary expenditures incurred in its use. If they are wanton infringers of the complainants' rights, and seek to justify their infringement, by the pretext of working under the protection of some other patent, which, in fact, adds nothing to the efficiency and value of the complainants' invention, other considerations come in which it is not necessary to advert to here.

The master seems to have been controlled in his action by the fact that the proof did not sufficiently show that the defendants had actually paid the royalty to the owner of the Hall patent. I do not perceive how their failure in this respect affects the case. It is not a question of payment, but of liability. If the defendants are liable for such royalty or license fee. it can hardly be maintained that the complainants ought to have the amount, because the defendants have not fulfilled their obligations, and paid the other patentee. One of the defendants, Dodge, swears that they agreed to pay such a royalty for the use of the patent, and did in truth pay it. There is no evidence to the contrary, and it must be accepted as true. This exception is. therefore, sustained.

3. The remaining exception is to the refusal of the master to allow the item of $64, the amount spent by the defendants for "electrotyping and engraving." The testimony in regard to this charge is extremely meagre. The only reference to it, that I have found, is in the evidence of Mr. Dodge,

who was asked how this sum was ascertained, and who replied that he did not remember whether it was made up from the actual examination of the bills, or by footing up the cost of the respective engravings. The master excluded the charge because he regarded it "as more a matter of personal gratification to the defendants than a legitimate charge for expenses in conducting the business."

I am sorry that no one, acting under the reference, thought the subject of enough consequence to make more inquiry respecting it. I am inclined to believe that the master has misunderstood its character or design. It was probably a species of advertising the mitre machine—appealing to the eye by pictures and thus attracting the public attention. In this view it was as legitimate an expenditure, and enters as directly into the cost of manufacturing and selling, as advertising in newspapers, which has become one of the recognized methods of prosecuting a successful business. Looking at it in this aspect, and assuming, from the uncontradicted proof, that the money was expended, I must regard the charge as proper and sustain the exception.

There is no need of sending the case back to the master for correction, as the two items ruled out by him aggregate $1026; and this sum, being deducted from the amount found by the master, to wit, $2672.41, leaves $1646.41, for which the decree should be entered.